## Case No. 1,819.
### BRAY et al. v. The ATALANTA.
[Bee, 48.][2]

District Court, D. South Carolina. Sept. 22, 1794.

SEAMEN—WAGES—INTERRUPTION OF VOYAGE—FORFEITURE—IMPRISONMENT.

1. If a voyage be interrupted without the fault of the crew they shall receive wages during the time they work on board the vessel in port.

[Cited in Joy v. Allen, Case No. 7,552; Hoffman v. Yarrington, Id. 6,580; The Heroe, 21 Fed. 528.]

[See The Maria, Case No. 9,074; Hindman v. Shaw, Id. 6,514; The Hudson, Id. 6,831; Hussey v. Fields, Id. 6,947; The Page, Id. 10,660.]

2. The act of congress for the regulation of merchant seamen must be strictly followed, it being penal. If the mariners suffer imprisonment under the 7th clause of that act, they shall not also forfeit wages under the 5th clause.

[Cited in Sherwood v. McIntosh, Case No. 12,778; Brower v. The Maiden, Id. 1,970.]

In admiralty.

This is a libel for wages. The ship was bound on a voyage to Liverpool and back; the actors shipped at different times in the month of June last, and signed articles with Captain Wilson to proceed on the voyage. On the 4th July the ship attempted to pass the bar, but struck, and made so much water, in consequence, as to be forced back to Charleston. This took place on the 29th July; and on the 2d August, Captain Wilson left the ship. On the 5th Captain Hazard took command of her, on which all the men quitted her, and went on shore: some of the crew, however, returned and went to work under the new captain. The others, among whom were several of these actors, were taken up and sent to jail under the 7th section of the act of congress for the regulation of seamen. [1 Stat. 134.] They applied to this court for a discharge, suggesting that the ship was unfit for sea, and requested a survey. This was ordered, and they were directed to return on board and do their duty. On the day following, they went on board and carried the vessel up to Gadsden's wharf. From the logbook it appears that they remained on board, more or less, until the 24th of August, when they all left the ship, and have not since returned. It appears also by the logbook that the seamen were dissatisfied at several times, and though no reason is assigned, yet it appears from a letter of the owners that upon their insisting that the vessel should go to sea, the men refused to proceed in her.

Three circumstances have been stated as material in all contracts with seamen. 1st. That the vessel be sound. 2d. That the captain be known to them, and one on whom they may depend for their wages. 3d. That the voyage be certain and defined.

It is contended that, in this case, the two first requisites fail; that the seamen are no longer bound by their articles; and that their wages are due. That they are not within the act of congress. That a change of captain is a breach of the articles, and that an equitable construction should be given to the contracts of seamen. Hopkinson, 122 [Brice v. The Nancy, Case No. 1,855].

It is clear that this vessel is not seaworthy.

---

[1] [Reprinted from 2 N. B. R. 139 (Quarto, 53), by permission. Syllabus, only, given in 1 Chi. Leg. News, 30.]

[2] [Reported by Hon. Thomas Bee, District Judge.]

A survey has been made, and it appears that the ship must be unloaded. When these men went on board the second time, the voyage appeared to be at an end. The original captain and the mate had quitted; all the passengers had removed their baggage, and come on shore. This is a state of things not contemplated at the signing of these articles, and must be taken into consideration by every court acting upon equitable principles. As to the change of captain, I do not think it justifies the seamen in leaving a ship after they have signed articles to proceed on a definite voyage; for, although the contract is made with the captain, yet it is chiefly on the credit of the vessel that they depend for their wages. And if the vessel be lost, it cannot be said that they would have a claim on the captain personally. The captain may die, or be dismissed by the owners, after articles signed; but this would by no means discharge the seamen. The vessel, the owners, and the new captain would be liable to their claim for wages, and, as contracts are mutual, they are also bound. As to the certainty of voyage the articles are sufficiently express.

The circumstances of this case are of a peculiar kind, and the regulations of the act of congress have not been duly attended to. If, on the first refusal of the men to do their duty, (because the captain was changed) the directions of the act had been followed, I do not think I could have interfered; but it is a penal law and must be construed strictly. The act requires the name of each seaman absenting himself to be entered in the logbook; this was not done: a general entry "that the mate and all hands had gone ashore" is all that appears. At this period, the owners had an option of sending these men to jail, under the 7th section of the act; or of resisting payment of their wages, under the 5th. They chose the former, and cannot have both remedies. Gammon, the mate; and Cole, the steward, are not on the logbook at all. They, therefore, cannot be affected in any way by the act. The other parties to the suit, after they were taken from jail, continued in the ship till she returned to Gadsden's wharf. The logbook specifies their working on board from the 13th to the 23d of August. On the 24th the logbook states that "the people were all absent," whereas they should have been severally named. It is laid down in 3 Bac. Abr. 594, "that if a contract be made with seamen to go a voyage, and they, in order thereto, work in a harbour, and afterwards the voyage be interrupted through the owner's fault, (as if the ship be arrested for debt, &c.) the seamen shall have their wages for work done in the harbour." This seems applicable to the case before me, for though the owners are not in fault, the hardship upon the seamen would be equal, if they should lose what they have earned.

Upon the whole, I cannot decree a forfeiture of wages, because the act of congress has not been complied with; yet as there has been much to blame in the conduct of the men, and as the owners have been compelled to hire others in their room, I shall not saddle the latter with double expenses. I therefore adjudge and decree: That Gammon, the mate, having quitted the vessel on the change of captain, and thereby sanctioned, in some measure, that conduct in the rest, shall be satisfied with one month's wages in advance, which he received on signing the articles. That Cole, the steward, who has received ten dollars in advance, receive ten more, as all to which he is entitled. That the seamen who have been imprisoned receive their wages, as stipulated in the articles, from the time they respectively signed them, until the 24th August, when they finally left the ship; deducting, however, any sums that may have been advanced to them, and also their pay from the 5th August to the 13th, during which time they were not on board. Let each party pay his own costs of suit.